PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SEAN CARTER, | ) | |
| | ) | CASE NO.  3:02CV00524 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| MARGARET BRADSHAW, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Respondent. | ) | **ORDER** [Resolving ECF No. 214] |

Before the Court is Petitioner Sean Carter's motion for an updated competency evaluation.[1]

ECF No. 214.  Respondent Warden Margaret Bradshaw ("the State") filed a memorandum in

opposition to the motion, to which Carter replied.  ECF Nos. 216 and 219.  For the following

reasons, the Court denies Carter's motion without prejudice.

## I. Background

Carter's competency has been at the forefront of his case since he was indicted in 1997 for

the aggravated murder and rape of his adoptive grandmother, Veader Prince.  *See State v. Carter,*

*89 Ohio St.3d 593, 603-05, 734 N.E.2d 345 (2000)*.  The state trial court conducted two competency

hearings prior to his trial and found him competent to stand trial each time.  *Id*. at 603-04.  Carter

entered a plea of not guilty by reason of insanity.  *Id.* at 604.  The trial court excluded him from the

courtroom for much of the trial after he was disruptive and "lunged at the judge."  *Id*. at 605 n.3.  A

jury convicted Carter of aggravated murder with two death specifications, as well as aggravated

robbery, rape, and criminal trespass.  *Id.* at 597.  Carter was sentenced to death.  *Id.*

---

[1] This case was transferred to the undersigned from United States District Judge Peter C.
Economus on June 1, 2011.

(3:02CV00524)

In his direct appeal to the Ohio Supreme Court, Carter raised, *inter alia*, issues regarding his competency to stand trial and his counsel's performance in regard to his competency. *Id.* at 603-605. On September 13, 2000, the Ohio Supreme Court affirmed Carter's convictions and sentence. *Id.* at 611.  Carter also pursued postconviction relief in state trial court, asserting, among other claims, ineffective assistance of trial counsel.  ECF No. 138 at 22.  The trial court dismissed Carter's petition.  ECF No. 138 at 23.  After Carter appealed, the Ohio Court of Appeals affirmed the trial court's judgment.  ECF No. 138 at 23.  The Ohio Supreme Court dismissed Carter's subsequent appeal from that ruling.  ECF No. 138 at 24.

On March 19, 2002, Carter, through new counsel from the public defender's office, initiated federal habeas corpus proceedings by filing a suggestion of incompetence and an ex parte motion for the appointment of a mental health expert to assist counsel in assessing Carter's competency. ECF Nos. 1 and 6.  Carter, who at the time was housed at a prison psychiatric facility, had denied requests to meet with representatives from the public defender's office and had expressed a desire to be executed.  The Court granted the motion.  ECF No. 10.  After meeting with counsel and acknowledging his wish to proceed with federal habeas proceedings, Carter withdrew the request for the appointment of expert services.  ECF No. 26.

On January 15, 2003, Carter, through counsel, filed a Rule 26(B) application with the Ohio Supreme Court to reopen his direct appeal.  ECF No. 138 at 24. Carter argued that (1) his direct appeals counsel had failed to raise all instances of prosecutorial misconduct and ineffective assistance of trial counsel; and (2) the trial court had failed to ensure that Carter was competent and to safeguard his right to be present at trial.  ECF No. 138 at 25. Although the Rule 26(B) application

(3:02CV00524)

was filed more than two years after the expiration of the filing cutoff, Carter argued that he had good

cause for the delay: his new counsel "determined that the arguments made on Mr. Carter's behalf

during his direct appeal before [the Ohio Supreme Court] were incomplete." ECF No. 219-1 at 2.

On March 19, 2003, the Ohio Supreme Court denied Carter's application without explanation. *State*

*v. Carter*, 98 Ohio St.3d 1486, 785 N.E.2d 470 (2003).

On January 19, 2005, Carter sought and received permission from this Court to obtain

psychological and neurological evaluations for his federal habeas litigation. ECF No. 117. He filed

a third amended habeas petition on October 3, 2005, to which the State filed an amended return of

writ. ECF Nos. 129 and 138. In the third amended petition, Carter asserted nine grounds for relief,

including claims that he was incompetent to stand trial, that he was unlawfully removed from the

trial proceedings, and ineffective assistance of both trial and direct appellate counsel. ECF No. 129.

Along with the third amended habeas petition, Carter filed a motion for a competency

determination and to stay the federal habeas proceedings. ECF No. 132. The Court held a

competency hearing on May 1, 2006. ECF Nos. 169, 170. Later, the Court ordered the Ohio

Department of Rehabilitation and Correction to provide Carter with updated prison records

concerning his mental health, and permitted post-hearing briefing. ECF Nos. 171, 192.

In the resulting ruling, the Court discussed the evidence of Carter's mental illness:

[At the evidentiary hearing,] Carter called Dr. Robert Stinson to testify on his behalf.
Dr. Stinson first testified about Carter's childhood and mental health history. He
stated that Carter's mother was diagnosed with schizophrenia prior to his birth.
Children's Services removed Carter from her custody at age two when he was
discovered tied to a couch and suffering from malnutrition.

After being placed in foster care, Carter was adopted. That adoption ended abruptly
when Children's Services became aware of verbal and physical abuse in the home.

3

(3:02CV00524)

Carter thereafter was adopted by the Carter family. He lived with them until age 16 when he was placed in the custody of the Department of Youth Services. Records from as far back as age two indicate that Carter's intellectual functioning placed him in the mild mental retardation range. By age six, one report indicated that Carter was schizoid-prone and at high risk of becoming detached from reality.

Based on these records and his examinations of Carter, Dr. Stinson diagnosed Carter with schizophrenia, undifferentiated type, continuous course with prominent negative symptoms, as well as depressive disorder not specified, a personality disorder, and substance dependence that is in remission. He stated that Carter experiences hallucinations that lead to problems in perception. The schizophrenia also distorts his inferential thinking. Dr. Stinson concluded that deficits in Carter's behavioral monitoring manifests in poor physical hygiene, spontaneous laughter, and unpredictable agitation.

Most significantly, Dr. Stinson observed, were the disease's affect on his language and communication abilities. When speaking to Carter, Dr. Stinson observed that, "[Carter] lacks spontaneity, lacks elaboration. His discussion is void of detail. He doesn't engage in dialogue and provides a lot of empty responses." (Dkt. # 172, at 17).

Dr. Stinson opined that Carter does not have a factual understanding of the proceedings. For example, Dr. Stinson testified, Carter held the false belief that he could not be executed unless he volunteered. Additionally, when Dr. Stinson asked Carter to supply him with the name of one of his habeas attorneys, Carter responded with the name of one of his trial attorneys and Dr. Phillip Resnick, the examining psychiatrist for the State. His prognosis for Carter's return to lucidity was poor. Upon observing that, even with powerful anti-psychotic medication Carter still experienced several symptoms of schizophrenia, Dr. Stinson concluded that Carter likely will continue to experience severe symptoms of schizophrenia unless and/or until a new medication arrives that could more aggressively arrest his disease. *Id*. at 30.

On cross-examination, the [State] first queried on what standard Dr. Stinson based his opinion. Dr. Stinson replied that he used the standard set forth in *Rohan v. Woodford*, 334 F.3d 803 (9th Cir.2003), when assessing whether Carter understood the nature of the proceedings against him. Specifically, he questioned whether Carter knew he had been sentenced to death, whether he understood he could be executed, whether he understood the appeals process, and whether he knew who his attorneys were and what their goals were. (Dkt. # 172, at 45).

The [State] also questioned Dr. Stinson about Carter's belief that he could not be executed without volunteering. She queried whether this false belief derived from

4

(3:02CV00524)

Carter's being housed near a death-row inmate who previously had waived all further appeals and was thereafter executed. After explaining that this was Carter's only contact with a fellow inmate who was executed, she questioned whether Carter's belief was rational and based on observances he made.

Dr. Stinson replied that Carter's inability to comprehend that he could be executed was referred to in psychological terms as a "fixed false belief," i.e., an inaccurate perception that does not change even after attempts to educate the individual to the contrary. (Dkt. # 172, at 74). Consequently, Dr. Stinson determined, Carter would continue to internalize the belief that he could not be executed without volunteering regardless of how many occasions others attempted to dissuade him from this belief. Dr. Stinson concluded that, based in part on this false belief, Carter does not truly understand the adversarial nature of the proceedings. *Id*. at 89. Although Dr. Stinson conceded on cross-examination that Carter could communicate with his attorneys, he concluded that the severity of his schizophrenia renders him an "unreliable historian," requiring collateral records to corroborate his responses. *Id*. at 98.

Carter next called Dr. Michael M. Gelbort, a clinical neuropsychologist, to testify. After examining Carter, Dr. Gelbort stated that Carter's thinking skills are fragmented and distracted, primarily due to his distraction from internal stimuli. He noted that in instances other than receiving straightforward, concrete information, Carter would have trouble responding. Dr. Gelbort opined that Carter's capacity to learn new information and retain it was poor. When asked whether Carter could assist his attorney, Dr. Gelbort responded as follows:

> Will he be able to provide anything other than a seemingly basic assistance, to be able to consider what you present to him if it's other than very basic questions? While he may do so in many ways, it's not worth a whole lot of time or effort on his attorneys' part because his cognitive capabilities are so limited based on the test results, that what he will produce or give back to you is going to be of limited benefit....
>
> I know from my experience trying to elicit history, he is judged to be a very, very poor historian. Not that he's unwilling, but just simply to ask him questions does not elicit information from him that if he does know, he will recognize as being important or significant or relevant. And there are many times when, because of his poor memory, he doesn't have that information available to him at all, even though you would think that he would.

(Dkt. # 172, at 112-13).

5

(3:02CV00524)

The State called the final witness of the hearing, psychiatrist Dr. Phillip Resnick. Dr. Resnick diagnosed Carter with chronic undifferentiated schizophrenia, substance abuse, and a personality disorder. He noted that at the time he evaluated Carter, he did not appear to be suffering from any delusions. Dr. Resnick assessed Carter's mental prognosis as fair to poor.

During the course of his evaluation, Dr. Resnick testified that Carter was able to converse with him about the specific charges of which he was convicted, the victim, his adopted grandmother, and that he was sentenced to death. Additionally, Carter relayed to Dr. Resnick that if his appeals were not successful, he would receive a lethal injection. (Dkt. # 172, at 145). Although Dr. Resnick initially had reservations about whether Carter actually understood that he could be executed without volunteering, he allayed these concerns upon speaking to a social worker who confirmed that, after repeatedly attempting to educate Carter that he could be executed without volunteering, he had retained that information. Accordingly, Dr. Resnick satisfied himself that Carter no longer possessed this false belief.

When the [State] questioned Dr. Resnick about his ability to assist habeas counsel, he responded that Carter could respond to his attorneys but, "due to his illness, [could] not elaborate fully." *Id*. at 152. He described Carter's condition as follows:

> So if asked a question, he would give kind of a simple answer, a direct answer. You ask him how many sisters he has. He can give you an answer. But if you ask, would you describe each sister and explain what her personality is like, he would give a simple answer like she's nice, and would not be able to elaborate.
>
> So in my view, he meets the minimum standard because he can speak rationally and convey information. But I would defer to the Court as to what is sufficient with respect to elaboration.

(Dkt. # 172, at 152). When questioned about Carter's ability to reliably convey relevant information, Dr. Resnick replied, "I think he can convey the basic information, but if you're asking for rich details in his recollection of the trial or his description of family members, his illness does not permit him to give a rich description." *Id*. at 156. Dr. Resnick concluded that while Carter's disease is chronic, it currently was not in an acute phase.

Attached to his supplemental brief submitted to the Court on June 23, 2008, is Dr. Stinson's updated report regarding Carter's mental condition. Dr. Stinson opined that Carter's mental condition has deteriorated since the evidentiary hearing

6

(3:02CV00524)

> approximately two and a half years ago. He observed that from November 29, 2007, until December 20, 2007, Carter was transferred to Oakwood Correctional Facility, a psychiatric prison facility, because of his declining mental condition.
>
> Upon reviewing the notes from Oakwood, Dr. Stinson observed that Carter continues to experience hallucinations. Moreover, he has been disoriented and unable to comprehend or respond to communications from others. His daily functioning, while previously restricted, also has deteriorated with extremely poor personal hygiene and lack of consistent sleep habits due to nightly, persistent screaming and laughing. From these records, Dr. Stinson concluded that Carter's condition has become "progressively worse, and despite treatment, he appears to have significant psychosis and functional limitations even when he is at his expected baseline." (Dkt. # 194-2, Exh. A, at 20).

*Carter v. Bradshaw*, 583 F. Supp.2d 872, 874-77 (N.D. Ohio 2008) (Economus, J.).

Based on the above, the Court concluded that Carter could not comprehend the nature of the habeas proceedings and was unable to assist his habeas counsel. *Id.* at 881. The Court also determined that four of Carter's exhausted claims could benefit from his assistance: Carter's incompetency during trial and his unlawful removal from the trial proceedings (Ground One); ineffective assistance of trial counsel during mitigation (Ground Two); ineffective assistance of trial counsel in pursuing the competency issue (Ground Five); and ineffective assistance of appellate counsel for failing to raise trial counsel's failure to pursue the competency issue (Ground Six). *Id.* at 880. Thus, the Court dismissed the habeas petition without prejudice and prospectively tolled AEDPA's statute of limitations until Carter could be restored to competency. *Id.* at 880, 884-85.

On appeal, the Sixth Circuit Court of Appeals concluded that although "[f]ederal habeas petitioners facing the death penalty for state criminal convictions do not enjoy a constitutional right to competence," such a right can be found in 18 U.S.C. § 4241. *Carter v. Bradshaw*, 644 F.3d 329,

(3:02CV00524)

333-34 (6th Cir. 2011).  The Sixth Circuit amended this Court's judgment to order that Carter's

petition be stayed indefinitely with respect to any claims that require his assistance.  *Id.* at 337.

    The United States Supreme Court unanimously vacated the Sixth Circuit's decision.  *Ryan*

*v. Gonzales*, 133 S. Ct. 696 (2013).[2]  It held that 18 U.S.C. § 4241 does not confer upon incompetent

federal habeas petitioners a statutory right to suspend their habeas proceedings.[3]  *Id.* at 706-07.  It

recognized that "'[d]istrict courts . . . ordinarily have authority to issue stays, where such a stay

would be a proper exercise of discretion,'" and that "'AEDPA does not deprive district courts of

[this] authority.'"  *Id*. at 708 (quoting *Rhines v. Weber*, 544 U.S. 269, 276 (2005)).  The Supreme

Court proceeded to clarify, however, the "outer limits" of that authority.  *Id*.

    In Carter's case, the Supreme Court found that three of the claims found by this Court to

potentially benefit from Carter's assistance were adjudicated on the merits in state postconviction

proceedings.  *Id.* at 709.  Therefore, the Supreme Court concluded, these three claims were subject

to 28 U.S.C. § 2254(d)'s deferential review.  *Id.*  Because, under *Cullen v. Pinholster*, 131 S. Ct.

1388, 1398 (2011), this type of review is confined to the record before the state court, these claims

did not allow for Carter's extrarecord assistance, and, consequently, a stay.  *Gonzalez*, 133 S. Ct. at

709.  The Supreme Court remanded to this Court the issue of whether the "fourth" claim, ineffective

---

    [2] The Supreme Court consolidated Carter's case with that of Ernest Gonzales.  In
Gonzales's case, the Ninth Circuit granted a writ of mandamus ordering the district court to stay
his habeas proceedings pending a competency determination.  The Ninth Circuit found a
statutory right to competence during habeas proceedings in 18 U.S.C. § 3599(a)(2).  *Id.* at 701.

    [3] The Supreme Court held that § 3599(a)(2) also does not provide federal habeas
petitioners a right to competence during federal habeas proceedings.  *Id*. at 706.

8

(3:02CV00524)

assistance of appellate counsel (Ground Six), warrants a stay. *Id.* The Supreme Court noted that it

was unclear from the record whether that claim was exhausted–if it was, its review would also be

record-based. *Id.* Even if the claim was unexhausted and not procedurally defaulted, "an indefinite

stay would be inappropriate." *Id.* The Supreme Court admonished that "'[s]taying a federal habeas

petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the

solution of the federal proceedings.'" *Id.* (*quoting Rhines*, 544 U.S. at 277). At some point, the

opinion underscored, "the State must be allowed to defend its judgment of conviction." *Id.* The

Supreme Court then gave the following instruction:

> If a district court concludes that the petitioner's claim could substantially benefit
> from the petitioner's assistance, the district court should take into account the
> likelihood that the petitioner will regain competence in the foreseeable future. Where
> there is no reasonable hope of competence, a stay is inappropriate and merely
> frustrates the State's attempts to defend its presumptively valid judgment.

*Id.*

In his motion for an updated competency evaluation, Carter argues that because this Court

has already determined that four of his claims could potentially benefit from his assistance, and

because the Supreme Court "left open" the possibility that a stay was appropriate with respect to one

of those claims,"[t]he next step is for this Court to determine 'the likelihood that the petitioner will

regain competence in the foreseeable future.'" ECF No. 214 at 3. Therefore, in Carter's view, the

Court should grant the motion for an updated competency evaluation.

## II. Analysis

The claim for which the possibility of a stay was "left open" by the Supreme Court is Carter's

ineffective-assistance-of-appellate-counsel claim set forth in Ground Six of the third amended

(3:02CV00524)

petition.  In accordance with *Gonzalez*, this Court must consider the following factors in order to

determine whether staying this claim would be proper: whether the claim would substantially benefit

from Carter's assistance; whether the claim is exhausted; whether the claim is procedurally

defaulted; and the likelihood that Carter will regain competence in the foreseeable future.

The State argues that the claim at issue has been properly exhausted, and, since it was

adjudicated on the merits by the Ohio Supreme Court, its review must be based solely on the record

before that court.  ECF No. 216 at 4-5.  Therefore, "Carter cannot provide any admissible evidence

in support of the claim," thus dispensing with the need for further evaluation of his competency.

ECF No. 216 at 5.  Carter disputes that the claim was adjudicated on the merits.  ECF No. 219 at 2.

Carter contends that the Ohio Supreme Court summarily denied his Rule 26(B) application (where

he raised his ineffective-assistance-of-appellate-counsel claim) on the procedural ground of

untimeliness.  ECF No. 219 at 2.  While acknowledging that the application "was filed too late,"

Carter claims that his procedural default is excused under two Supreme Court decisions, *Martinez*

*v. Ryan*, 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013).

The claim at issue has been exhausted because Carter presented it to the Ohio Supreme Court

as permitted by Ohio Rule of Appellate Procedure 26(B).[4] *See O'Sullivan v. Boerckel*, 526 U.S. 838,

845 (1999) (to exhaust claim, "state prisoners must give the state courts one full opportunity to

resolve any constitutional issues by invoking one compete round of the State's established appellate

_____

[4] Rule 26(B) provides that "[a] defendant in a criminal case may apply for reopening of
the appeal from the judgment of conviction and sentence, based on a claim of ineffective
assistance of appellate counsel."  Ohio R. App. P. 26(B); *see State v. Murnahan*, 63 Ohio St.3d
60, 584 N.E.2d 1204 (Ohio 1992).

10

(3:02CV00524)

review process"). Whether federal habeas review of the claim must be limited to the state court record depends on whether that court resolved it on the merits. *Pinholster*, 131 S. Ct. at 1398.

In a summary order, the Ohio Supreme Court denied Carter's Rule 26(B) application without explanation. *Carter*, 98 Ohio St.3d at 1486. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011). The presumption may be overcome "when there is reason to think some other explanation for the state court's decision was more likely." *Id.* at 785. Carter contends that his untimely filing of the Rule 26(B) application "means that the Ohio Supreme Court never considered the merits of Carter's claim of ineffective assistance of appellate counsel." ECF No. 219 at 2.

True, Carter's failure to timely file the Rule 26(B) application creates the *possibility* that the Ohio Supreme Court did not render a merits-based decision. *See* Ohio R. App. P. 26(B) (applications "shall be filed . . . within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time"). Nevertheless, it is also possible that the Ohio Supreme Court decided the claim on the merits. Certainly, there is a presumption in favor of the latter explanation. Carter does not demonstrate that the presumption should be defeated; simply because a procedural bar exists to resolve a claim does not mean that a court's reliance on the procedural bar was *more likely*.

Assuming, for the sake of argument, that the Ohio Supreme Court denied the application on the procedural ground of untimeliness, Carter has all but conceded that his ineffective-assistance-of-

11

(3:02CV00524)

appellate-counsel claim has been procedurally defaulted.  *See* ECF No. 219 at 3.  A claim is

procedurally defaulted if it was not "not resolved on the merits in the state proceeding due to

petitioner's failure to raise [it] as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72,

87 (1977).  "In all cases in which a state prisoner has defaulted his federal claims in state court

pursuant to an independent and adequate state procedural rule, federal habeas review of the claims

is barred unless the prisoner can demonstrate cause for the default and actual prejudice . . . or

demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Accordingly, Carter relies on the Supreme

Court's decisions in *Martinez v. Ryan* and *Trevino v. Thaler* to show that his postconviction

counsel's failure to timely file a Rule 26(B) application supplies cause for his procedural default.

The Supreme Court held, in *Martinez v. Ryan*, that the "[i]nadequate  assistance of counsel

at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a

claim of ineffective assistance at trial." *Martinez*, 132 S. Ct. at 1315.  This holding represents a

"limited qualification" of *Coleman v. Thompson*, the case in which the Supreme Court held that "an

attorney's negligence in a postconviction proceeding does not establish cause" to excuse a procedural

default.[5]  *Id*. at 1319.  The *Martinez* Court explained:

> The rule of *Coleman* governs in all but the limited circumstances recognized here.
> The holding in this case does not concern attorney errors in other kinds of
> proceedings, including appeals from initial-review collateral proceedings, second or
> successive collateral proceedings, and petitions for discretionary review in a State's

---

[5] The rationale of *Coleman* was that "counsel's ineffectiveness will constitute cause only
if it is an independent constitutional violation" and "there is no [constitutional] right to counsel
in state collateral proceedings." *Coleman*, 501 U.S. at 755.

12

(3:02CV00524)

> appellate courts . . . . *It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial,* even though that initial-review collateral proceeding may be deficient for other reasons.

*Id*. at 1320 (citations omitted; emphasis added).  The exception created in *Martinez* was founded on the Supreme Court's concern that, in states that require ineffective-assistance-of-trial-counsel claims to be brought in a collateral proceeding, a prisoner may be deprived of this important claim if counsel in such a proceeding was deficient.  *Id.* at 1317 ("[a] prisoner's ability to present a claim of trial error is of particular concern when the claim is one of ineffective assistance of counsel.  The right to the effective assistance of counsel at trial is a bedrock principle in our justice system").  After *Martinez*, the Supreme Court expanded the exception to apply when the state, by reason of the "design and operation" of its procedural framework, permits but "makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal . . . ."  *Trevino*, 133 S. Ct. at 1921.

The Sixth Circuit has refused, however, to extend *Martinez* to allow the ineffectiveness of postconviction counsel to supply cause for the procedural default of a claim of ineffective assistance of *appellate* counsel.  The Sixth Circuit explicitly stated: "Under *Martinez*'s unambiguous holding our previous understanding of *Coleman* in this regard is still the law–ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of appellate counsel."  *Hodges v. Colson*, 727 F.3d 517, 531 (6ᵗʰ Cir. 2013).  Therefore, under the precedent to which this Court is bound, Carter's procedural default cannot be excused by the failure of his postconviction counsel to timely file a Rule 26(B) application.

13

(3:02CV00524)

As discussed, the Supreme Court instructed this Court to consider whether and when Carter will regain competence *if* Carter's claim could substantially benefit from his assistance. *Gonzalez,* 133 S. Ct. at 709. A claim that is barred by an unexcused procedural default cannot substantially benefit from a habeas petitioner's assistance. Perhaps some other legitimate reason may permit federal habeas review of this defaulted claim. Having been presented with no such reason, however, the Court concludes that it is inappropriate to order an updated competency evaluation when Carter's assistance, beyond that already reflected in the State court record, would be irrelevant and unavailing.

Finally, Carter maintains that his claims asserting ineffective assistance of *trial* counsel during mitigation (Ground Two) are not exhausted, are not procedurally defaulted, and would benefit from his assistance. ECF No. 219 at 4-6. The Supreme Court already held, however, that "these claims do not warrant a stay." *Gonzalez,* 133 S. Ct. at 709. The Supreme Court was referring to three of the four claims found by this Court to potentially benefit from Carter's assistance (the fourth claim being the ineffective-assistance-of-appellate-counsel claim, discussed above, for which the Supreme Court left open the question of whether a stay was appropriate). *Id.* This Court must, on remand, honor the explicit holding of the United States Supreme Court. Because Carter does not explain why acting otherwise would be permissible, the Court will not order an updated competency evaluation to determine whether Carter may regain competence to assist with these claims.

(3:02CV00524)

### III. Conclusion

Based on the above, the Court denies Carter's motion for an updated competency evaluation without prejudice.  The Court possesses the authority to reconsider the matter if it is presented with reasons establishing that Carter's assistance would be relevant and availing.

Briefing on Carter's third amended petition is incomplete.  The Court hereby orders Carter to file, within sixty days of this order, a traverse in response to the State's amended return of writ docketed at ECF No. 138.


       IT IS SO ORDERED.


 March 31, 2014                               /s/ Benita Y. Pearson
Date                                         Benita Y. Pearson
                                             United States District Judge