PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SEAN CARTER, | ) | |
| | ) | CASE NO. 3:02CV00524 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| MARGARET BRADSHAW, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Respondent. | ) | **ORDER** [Resolving ECF No. 233] |

Before the Court is Petitioner Sean Carter's motion to alter or amend this Court's judgment dismissing his amended petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. ECF No. 233. Respondent Warden Norm Robinson ("the State") opposes the motion.[1] ECF No. 234. For the reasons that follow, Carter's motion to alter or amend (ECF No. 233) is denied.

### I. Relevant Background

On March 19, 2002, Carter initiated these habeas corpus proceedings, challenging the constitutionality of his convictions and death sentence, rendered by an Ohio court, for the aggravated murder and rape of his adoptive grandmother, Veader Prince. *See* ECF No. 1. This Court denied Carter's amended petition for writ of habeas corpus on September 30, 2015. ECF

---

[1] From the parties' filings, it appears that Norm Robinson, not Margaret Bradshaw, is the current Warden. For consistency, the Court maintains the Respondent originally named, Margaret Bradshaw.

(3:02CV00524)

No. 231. Carter now moves the Court to alter or amend its judgment pursuant to Fed. R. Civ. P. 59(e). He contests the Court's denial of his claim, raised in the second ground for relief, that his trial counsel were ineffective for failing to obtain "readily available evidence of Carter's organic brain impairment." ECF No. 233 at PageID #: 2194.

## II. Standard of Review

Federal Civil Rule 59(e) authorizes motions to alter, amend, or vacate a prior judgment. Fed. R. Civ. P. 59(e); *Huff v. Metro. Life Insur. Co.*, 675 F.2d 119, 122 (6th Cir. 1982). Such motions may be granted "if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). This "'allow[s] the district court to correct its own errors, sparing the parties and appellate courts the burden of unnecessary appellate proceedings.'" *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) (quoting *York v. Tate*, 858 F.2d 343, 348 (6th Cir. 1988)).

The grant or denial of a Rule 59(e) motion is within the informed discretion of the district court. *Huff*, 675 F.2d at 122. Relief under Rule 59(e), however, "is an extraordinary remedy and should be granted sparingly because of the interests in finality and conservation of scarce judicial resources." *U.S. ex rel. Am. Textile Mfrs. Inst. Inc. v. The Limited, Inc.*, 179 F.R.D. 541, 547 (S.D. Ohio 1998); *see also Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) (noting that the "extraordinary circumstances" justifying the reopening of a final judgment "will rarely occur in the habeas context"). "Rule 59(e) motions cannot be used to present new arguments that could

2

(3:02CV00524)

have been raised prior to judgment." *Howard*, 533 F.3d at 475; s*ee also Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1988). The Rule "allows for reconsideration; it does not permit parties to effectively 're-argue a case." *Howard*, 533 F.3d at 475 (quoting *Sault Ste. Marie Tribe*, 146 F.3d at 374).

### III.  Analysis

Carter argues that the Court committed clear error of law in denying his claim that his trial counsel were ineffective for failing to obtain neurological testing to detect organic brain injury, specifically, an MRI. ECF No. 233 at PageID #: 2194. The Court concluded,

> Given Dr. King's express opinion that an MRI would *not* have advanced Carter's case for mitigation, it is possible that Carter's trial counsel decided that, for sound strategic reasons, the risk posed by an MRI was greater than its potential benefits: an MRI may have shown that Carter had no brain defect at all and actually weakened Carter's position. *See Morris v. Carpenter*, Nos. 11-6322/6323, 2015 WL 5573671, at *15 (6th Cir. Sept. 23, 2015) ("Attorneys are entitled to rely on the opinions and conclusions of mental-health experts.") (citing *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 758 (6th Cir. 2013); *Black v. Bell*, 664 F.3d 81, 104-05 (6th Cir. 2011)). Furthermore, the speculative nature of this claim precludes a showing of prejudice; without knowing the results of an MRI test, Carter cannot demonstrate that his counsel's decision to forgo the testing affected the outcome of the jury's sentencing.

ECF No. 231 at PageID #: 2151-52.

Carter first contends that the Court's decision is "erroneous" because it relies on a "mistaken interpretation of Dr. King's testimony." ECF No. 233 at PageID #: 2194. Carter argues that Dr. King was not hired for purposes of mitigation and "never testified about the mitigation available to Carter." *Id.* at PageID #: 2194-95. He further asserts that the record did not support the Court's "speculation" that, given Dr. King's position regarding the evidentiary

3

(3:02CV00524)

value of an MRI, counsel may have decided not to pursue the testing for strategic reasons. *Id.* at PageID #: 2197.  To support this contention, Carter asserts that his counsel were aware of evidence of organic brain impairment, such as an injury caused at birth and seizures.  ECF No. 233 at PageID #: 2198.

The Court finds no error in its analysis or conclusion.  As the Court explained, the U.S. Supreme Court has advised habeas courts reviewing ineffective-assistance claims to "begin with the premise that 'under the circumstances, the challenged action[s] might be considered sound trial strategy.'" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1404 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).  Indeed, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Strickland*, 466 U.S. at 690.  The Supreme Court repeatedly has held that counsel is not ineffective for deciding to offer little or no mitigating evidence when that decision is based on sound professional judgment.  *See, e.g.*, *Bell v. Cone*, 535 U.S. 685, 702 (2002); *Strickland*, 466 U.S. at 699-700; *Burger v. Kemp*, 483 U.S. 776, 793-75 (1987); *Darden v. Wainwright*, 477 U.S. 168, 184 (1986).

Moreover, habeas courts may infer from the record a trial attorney's strategic basis for a challenged decision.  The Supreme Court has explained,

> Although courts may not indulge "post hoc rationalization" for counsel's decisionmaking that contradicts the available evidence of counsel's actions, . . . neither may they insist counsel confirm every aspect of the strategic basis for his or her actions.  There is a "strong presumption" that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect."

(3:02CV00524)

*Harrington v. Richter*, 562 U.S. 86, 109 (2011) (citations omitted).

Applying these standards, it is reasonable to infer from the record that defense counsel's decision to forgo MRI testing for mitigation purposes was sound trial strategy. At the conclusion of the first competency hearing, the trial judge announced his ruling that Carter was competent to stand trial. He stated he did not "even think there [was] any question about it as far as that issue goes." Trial Tr. vol. I at 100. He then denied defense counsel's request for funding for a second expert and an MRI "on the issue of competence." *Id.* at 100-01. The judge stated, however, that he would reconsider the MRI request if counsel had "*some other reason later on* in this case" and could "present evidence of a particularized need." *Id.* at 101 (emphasis added).

At the second competency hearing, defense counsel asked Dr. King if MRI testing "would be advisable." Trial Tr. vol. VI at 564-65. Dr. King replied, "Yes. I think it would be comprehensive to do such [a] test, yes." *Id.* at 565. The judge then interjected, "Do you need that *for any of your opinions*, doctor?" Dr. King answered, "No." *Id.* (emphasis added). The judge pressed Dr. King on the MRI issue, indicating a concern about the potential need for MRI testing for mitigation as well as competency issues. The judge told Dr. King he "would be glad to order [an MRI] if it would be helpful *in some area*, but if it's not going to be. You don't need it for *your opinions*, correct?" Dr. King replied, "No. No, I don't." *Id.* (emphasis added). The judge then asked him why he had said it would be "necessary for this case," and Dr. King explained that "Mr. Consoldane I think is implying that it would be helpful. I don't think he said it was necessary . . . ." *Id.* The judge pointedly ended the colloquy with this question: "But in

5

(3:02CV00524)

your opinion an MRI would not assist us in this case to render *any psychological opinions involving either sanity or competency or mental defect*?" Dr. King again replied, "No." *Id.* at 566 (emphasis added).  As Carter concedes, the term "mental defect" mirrors Ohio's statutory mitigating factor of "mental disease or defect."  ECF No. 233 at PageID #: 2196 (citing Ohio Rev. Code § 2929.04(B)(3)).

Carter points out that trial counsel then elicited from Dr. King that an MRI would "be able to determine whether or not there was organic brain damage."  Trial Tr. vol. VI at 566.  But when counsel followed up on this question, Dr. King equivocated.  Counsel asked him, "[I]f [Carter] had an organic brain disorder, which there is some possible indications due to the birth and with having seizures and that sort of thing, . . . would [an MRI] be able to tell us for sure whether he had an organic brain problem or whether this is all of a different nature?"  Dr. King responded, "Maybe I can say what I would recommend for this man."  *Id.* at 567.  He went on to emphasize Carter's psychotic disorder, without mentioning organic brain injury at all.  He testified,

> I would recommend that this man be hospitalized and have a very comprehensive psychiatric evaluation because in my opinion this man suffers from some mental illness.  In my opinion I gave him a diagnosis of psychotic disorder not otherwise specified because the symptoms at this point are somewhat subtle, not crystal clearly defined, except for the paranoia and the inappropriate hostility that he has.  So I think with more careful observation and assessment his psychiatric condition could become more clear, and *possibly some diagnostic tests like an MRI would be helpful*.
>
> *But my concern is that this man does suffer from a psychotic disorder . . . .*

*Id.* at 567-68 (emphasis added).

6

(3:02CV00524)

At a later pretrial hearing, the judge again inquired about the defense's request for funds for an MRI, this time specifically referencing mitigation. He stated,

> The Court is mindful of the fact that mental defect and/or, just on a general basis as a mitigating factor, a mental condition could become important in this case should this case go to a second phase. That being the case, and your expert saying he would like to see that, Dr. King, I will now allow you to do that. . . . Do you wish to have that done?

Trial Tr. vol. VII at 870. Attorney Consoldone replied that he "wanted that done for the competency [hearing]," but that he would decline the court's offer of funding for an MRI for mitigation purposes "unless we can find some other organic evidence that would substantiate that." *Id.*

Thus, even though Dr. King testified that an MRI is able to detect organic brain injury, his testimony reveals that he did not strongly advocate its use to show Carter had such an impairment, including for mitigation purposes. Dr. King opined only that an MRI "possibly" would be "helpful" in providing a more "comprehensive" picture of Carter's psychiatric condition; he explicitly dodged counsel's invitation to state definitively that an MRI would detect a brain injury if Carter had one, and expressly testified that it would not assist him in forming an opinion about Carter's sanity, competency, or potentially mitigating "mental defect." Based on this testimony, it is apparent that counsel did not decline the trial court's repeated offers of funding for an MRI due to incompetence or "sheer neglect." *Harrington*, 562 U.S. at 109. Rather, relying on Dr. King's opinion, counsel reasonably may have believed they did not have (1) sufficient evidence upon which to base a request for MRI funding or (2) sufficient reason to

7

(3:02CV00524)

believe the MRI results would have been a benefit rather than a detriment to the defense. This Court made no error of law in concluding, therefore, that trial counsel's decision to forgo MRI testing for mitigation reflected sound trial strategy, and the Ohio appellate court's decision that counsel's performance in this regard was not constitutionally deficient neither contravened nor misapplied *Strickland* and its progeny.

Carter's second ground for challenging the Court's decision on his MRI-related ineffective-assistance claim is that the Court improperly "refused to consider" evidence he obtained during discovery in these habeas proceedings that satisfies *Strickland*'s prejudice prong. ECF No. 233 at PageID #: 2199-2203. Carter argues that Ohio's post-conviction review system denied him his due process right to develop this claim in state court, rendering the Ohio appellate court's decision that he submitted insufficient evidence to prevail an unreasonable determination of the facts under § 2254(d)(2). ECF No. 233 at PageID #: 2202-03. This argument also fails.

Carter raised his competency ineffective-assistance claims in state courts, which adjudicated them on the merits. *See* ECF No. 231 at PageID #: 2117. This Court was precluded, therefore, under *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011), from considering any evidence in support of those claims that was not presented to the state courts. *See id.* at PageID #: 2150, n.13. Indeed, the Supreme Court, in its review of Carter's right to competence during habeas proceedings, expressly ruled that the claims were adjudicated on the merits in state courts and "[a]ny extrarecord evidence that Carter might have concerning these claims would therefore

(3:02CV00524)

be inadmissible." *Ryan v. Gonzales*, 133 S. Ct. 696, 709 (2013) (citing *Pinholster*, 131 S. Ct. at 1398); *see also* ECF No. 231 at PageID #: 2103.

### IV. Conclusion

For the foregoing reasons, this Court denies Carter's motion to alter or amend its judgment (ECF No. 233) dismissing his petition for writ of habeas corpus.

IT IS SO ORDERED.

| | |
|---|---|
|   April 8, 2016 |   /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |